UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC, ) | Civil Action No.: 4:11-cv-2022-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| PEE DEE BENEVOLENT SOCIETY, INC. ) | |
| d/b/a Club V; J. MICHAEL TIMMONS, ) | |
| JR. a/k/a John Timmons; and CHARLES ) | |
| E. LAMB; ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I. INTRODUCTION

Plaintiff brings this action pursuant to 47 U.S.C. § 553 for the unauthorized reception of cable service and 47 U.S.C. § 605 for the unauthorized publication or use of communications. Presently before the Court is Plaintiff's Motion for Default Judgment (Document # 10). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e),DSC. Because Plaintiff's Motion is dispositive, this Report and Recommendation is entered for review by the district judge.

## II. PROCEDURAL HISTORY

Plaintiff filed this action on August 2, 2011. On August 19, 2011, Plaintiff filed an Affidavit of Service (Document # 6) indicating Defendants Pee Dee Benevolent Society, Inc. and J. Michael Timmons were personally served on August 9, 2011, and Defendant Charles E. Lamb was personally served on August 5, 2009. Defendants failed to timely file an Answer or otherwise respond to Plaintiff's Complaint. Thus, upon Plaintiff's request, the Clerk of Court made an Entry of Default

(Entry # 9) on September 8, 2011.  The present Motion for Default Judgment followed.

**III.   FACTS**

A review of Plaintiff's Complaint, Request for Entry of Default, Motion for Default Judgment, and all supporting Affidavits and other information provided reveals the following facts, which are accepted as true in light of Defendants' default.  See DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 322 n.1 (4th Cir. 2009) (accepting plaintiff's allegations against defaulting defendant as true, noting a defaulting defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established") (quoting Ryan v. Homecomings Fin. Network, 253 F.3D 778, 780 (4th Cir. 2001)).

By contract, Plaintiff Joe Hand Promotions, Inc., paid for and was thereafter granted the exclusive nationwide television distribution rights to the Ultimate Fighting Championship 101: Declaration, including all under-card bouts and fight commentary encompassed in the television broadcast of the event, which aired on August 8, 2009 (hereinafter referred as the "Program").  Hand Affidavit (attached as an Exhibit to Plaintiff's Motion). Pursuant to contract, Plaintiff entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of South Carolina, by which it granted these entities limited sublicensing rights, specifically the rights to publicly exhibit the Program to patrons within their respective establishments (i.e., racetracks, casinos, bars, restaurants, nightclubs, etc.). Hand Affidavit.

On August 8, 2009, private investigator John R. Lane observed the exhibition of Plaintiff's Program at the Defendants' place of business during business hours.  Lane Affidavit (attached as an Exhibit to Plaintiff's Motion).  In his Affidavit, Lane sets forth that he entered Club V, located at 1931 Second Loop Road, Florence, South Carolina, on August 8, 2009, at 10:40 p.m.  Id.  He

describes the doorman and the number of televisions and other distinguishing features of the establishment. Id. He also describes the names and attire of the fight participants in the Program. Id. Lane avers that 43 to 44 people were present at Club V while he was there and that Club V has an estimated capacity of 90 people. Id.

In the Complaint, Plaintiff alleges that Defendants J. Michael Timmons, a/k/a John Timmons and Charles E. Lamb "are the president, vice president, owners, members, principals, alter egos, managers, agents, and/or other representatives of the Defendant Pee Dee Benevolent Society, Inc." and that they "had dominion, control, oversight and management authority over said establishment." Complaint ¶¶ 8, 10.

## IV. DISCUSSION

Plaintiff asserts that Defendants' actions have violated both 47 U.S.C. § 553 and 47 U.S.C. § 605. These two statutory schemes provide relief for the alternate means of reception–cable and satellite, respectively–of the Program. In its Motion for Default Judgment, Plaintiff submits that it has established liability pursuant to 47 U.S.C. § 605 and 47 U.S.C. § 553, and because the two statutory schemes provide relief for the alternate means by which the Program might have been received (satellite or cable), Plaintiff elects to proceed under 47 U.S.C. § 605.

In electing to pursue damages pursuant to 47 U.S.C. § 605, Plaintiff concedes the split in authority as to the applicability of this section to pirated programming involving cable services--as opposed to satellite services--at the delivery point, and it submits that, without the benefit of discovery or an admission by Defendants, it is impossible to determine whether the Program was broadcast by cable or satellite signal. The court recognizes that 47 U.S.C. § 605 would be inapplicable if the delivery were by cable; however, given the default, Plaintiff cannot conduct

discovery to determine the mode of transmission.[1]

Section 605 provides, in pertinent part, that

> no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof [ ] to [ ] any person other than the addressee, his agent or attorney[.]

47 U.S.C. § 605(a). By way of Lane's affidavit, in which he avers that he viewed the program at Club V, Plaintiff has presented evidence sufficient to establish that Defendants "divulged" the Program to its patrons.

The available penalties and remedies for violation of 47 U.S.C. § 605(a) include a private civil action, as follows:

> (B) The court--
>
>> (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;
>>
>> (ii) may award damages as described in subparagraph (C); and
>>
>> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B). Plaintiff seeks damages, attorneys' fees and costs.

The statute sets out the following available damages:

> (C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses:
>
>> (I) the party aggrieved may recover the actual damages suffered

---

[1] A higher range of damages is available in 47 U.S.C. § 605 than in 47 U.S.C. § 553. Nevertheless, this distinction is of no moment in the present case in light of the amount of damages the undersigned recommends.

> by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.
>
> (ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section. . . .

47 U.S.C. § 605(e)(3)(C).

Plaintiff seeks to recover statutory damages available under 47 U.S.C. § 605(e)(3)(C)(i)(II), rather than actual damages available under 47 U.S.C. § 605(e)(3)(C)(i)(I). Because of Defendants' default, actual damages are difficult to prove as Plaintiff has not been able to conduct discovery concerning, among other things, Defendants' profits from the broadcast of the Program. Plaintiff seeks $10,000 in statutory damages, which is the maximum available pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), and it argues for the maximum recoverable statutory damages to compensate Plaintiff for its damages and for the deterrent effect it may have in minimizing such future conduct. Courts have used various methods of determining an appropriate amount of statutory damages. Some courts fashion an award by considering the number of patrons who viewed the programming,

often multiplying that number by the cost if each had paid the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff. Other courts award a flat amount for a violation. See J & J Sports Prods., Inc. v. JR'z Neighborhood Sports Grille, Inc., 2:09-3141-DCN, 2010 WL 1838432 (D.S.C. April 5, 2010) (noting various methods of calculating statutory damages); Joe Hand Promotions, Inc. v. Precint Bar-Daxlam, Ltd., 3:10-199-CMC, 2010 WL 3420189 (D.S.C. Aug.23, 2010) (noting consideration of licensing fee "and the multiple and net amount necessary to ensure a deterrent effect").

In line with the awards recommended and/or awarded by this court for similar violations, see, e.g., Joe Hand Promotions, Inc. v. The Precint Bar-Daxlam, Ltd., 3:10-199-CMC, 2010 WL 3420189, *2 & n. 2 (D.S.C. Aug.23, 2010); Joe Hand Promotions, Inc. v. Jimmagan's Inlet, Inc., 4:10-801-TLW-SVH, 2010 WL 5141768, *2 (D.S.C. Oct. 1, 2010); Joe Hand Promotions, Inc. v. Scott's End Zone, Inc., 759 F.Supp.2d 742, 748 (D.S.C. 2010), the undersigned recommends a statutory damages award of $5,000. An award of approximately five times the license fee Defendants should have paid to legally broadcast the Program, when combined with the enhanced damages and attorneys' fees discussed below, is a sufficient deterrent of future conduct.

Plaintiff also seeks enhanced damages of $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). Section 605 allows for enhanced damages in addition to statutory damages when the violation is committed wilfully and for purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff's president, Joe Hand, avers, and it is undisputed, that the Program could not have been "mistakenly, innocently or accidentally intercepted." Hand Aff. ¶ 9. Although more than nominal damages should be

awarded to deter future violations, the maximum enhancement as sought by Plaintiff is inappropriate due to the absence of evidence of factors that courts find justify a larger award. For example, there is no evidence that Club V charged a cover, advertised the event, or obtained substantial revenue from broadcasting the Program. See generally Kingvision Pay-Per-View, Ltd. v. Guiterrez, 544 F.Supp.2d 1179, 1185 (D.Colo.2008) (listing factors that courts consider in awarding enhanced damages). Accordingly, it is recommended that Plaintiff be awarded enhanced damages in the amount of $10,000.

Finally, Plaintiff seeks attorney's fees under § 605(e)(3)(B)(iii), which states that the court "shall" award attorney's fees and costs. Plaintiff submits the Affidavits of its counsel, Leonard R. Jordan, Jr. and Thomas P. Riley, in support of its request for fees and costs.

In determining what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar figure), the court must consider the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.1978); Jackson v. Estelle's Place, LLC, No. 09-1700, 2010 WL 3190697, *4 (4th Cir. Aug.12, 2010). A number of the factors may not be applicable in a particular case and, thus, need not be

strictly applied. See E.E.O.C. v. Service News Co., 898 F.2d 958, 965 (4th Cir.1990)

Mr. Jordan, local counsel for Plaintiff, asserts that his services are routinely billed at $200 per hour and he has spent approximately 5.80 hours in representing Plaintiff in this matter for total attorney's fees of $1,050. Jordan Aff. ¶ 4. Mr. Jordan sets forth in his Affidavit an itemized description of the work he has done on this case. Id. The undersigned finds Jordan's rate and the time spent on this file to be reasonable. See, e.g., Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir.1994) ( quoting Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)) (noting that, to determine whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community"). Mr. Jordan also avers that Plaintiff has incurred litigation costs of $558.00, including the $350 filing fee and a $208 service of process fee. Id. at ¶ 5.

Mr. Riley, Plaintiff's pro hac vice counsel located in South Pasedena, California, avers that his billable hourly rate for federal civil litigation practice is $400 per hour. Riley Aff. ¶ 8. His firm bills administrative assistant time at $75 per hour and paralegal time at $100 per hour. Id. In support of these hourly rates, Riley avers that they "are well within the guidelines of the prevailing market rates within Los Angeles County and the United States," Id. at ¶ 9, and attaches the "Laffey Matrix," which has been adopted by the Northern District of California as a source of attorney's fees compensation. See IO Group, Inc. v. Jordan, 2010 WL 2231793 (N.D.Cal. June 1, 2010); but see Perez v. Cozen & O'Connor Group Long Term Disability Coverage, 2007 WL 2142292 (S.D.Cal. March 27, 2007); Fitzgerald v. City of Los Angeles, 2009 WL 960825 (C.D.Cal. April 7, 2009). The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits. Rum Creek, 31 F.3d at 175

(citing National Wildlife Federation v. Hanson, 859 F.2d 313 (4th Cir.1988)). However, rates for an attorney outside the relevant community can be considered in certain circumstances. Id. Here, Plaintiff retained Mr. Riley who then retained Mr. Jordan as local counsel to perform the bulk of the work on this file. Under these circumstances, the undersigned finds that the rates for Riley and his staff are reasonable. Riley sets forth an itemized description of the work completed by him, his administrative assistant, and his paralegal for a total of 3.2 hours and $311.25 in fees. Id. at ¶ 12.

Riley also avers that Plaintiff incurred costs for postage charges, photocopying charges and liquor/business license research fees totaling $54.15. Id. at ¶ 5.[2] Finally, Riley avers that Plaintiff incurred $500 in investigative costs prior to the filing of the present action. Id. at ¶ 2. Although at least one court has found that "investigative costs" are appropriately awarded under 47 U.S.C. § 605(e), see Kingvision Pay–Per–View, Ltd. v. Autar, 426 F.Supp.2d 59, 67 (E.D.N.Y.2006), the court noted that such an award requires the prevailing party to show that the fees sought are reasonable by including the investigator's billing rate, time and qualifications. Plaintiff has provided no such documentation here and, thus, the undersigned recommends denying this cost. In light of the foregoing discussion, it is recommended that Plaintiff be awarded attorneys' fees and costs in the amount of $1,973.40.

In sum, on Plaintiff's claim under 47 U.S.C. § 605, it is recommended that Plaintiff be awarded $5,000 in statutory damages, $10,000 in enhanced damages, and $1,973.40 in attorneys' fees and costs for a total award of $16,973.40.

---

[2]Riley also avers that his firm advanced to local counsel $350 for the filing fee and $100 for service costs. Id. ¶¶ 3-4. However, these costs are already set forth in Jordan's affidavit and are not recoverable twice.

Plaintiff also asserts a common law claim for conversion. To prove the tort of conversion, "the plaintiff must establish either title to or right to the possession of the personal property." Moseley v. Oswald, 376 S.C. 251, 254, 656 S.E.2d 380, 382 (2008); see also Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P., 385 S.C. 452, 466, 684 S.E.2d 756, 763 (2009) (discussing the availability of a conversion claim for documented, intangible property rights).

The evidence in the record is sufficient to show that Defendants are liable for conversion. Generally, the damages for conversion of personal property amount to the value of the property with interest. Equitable Life Assurance Society of the United States v. Okey, 812 F2d 906 (4th Cir. 1987). Plaintiff seeks $1,100.00 in actual damages. Plaintiff reaches this amount based upon the amount Defendants would have had to pay for a commercial sublicense fee to legally air the Program. Lane avers that Club V had a seating capacity of approximately 90 people, which, according to the Rate Card produced by Plaintiff, would require a commercial sublicense fee of $1,100.00. See Lane Affidavit; Hand Affidavit; Rate Card (attached as Exhibit 1 to Hand Affidavit). Thus, Plaintiff is entitled to $1,100.00 on the conversion claim. However, because Plaintiff cannot recover twice for the same wrong, Plaintiff must elect between its remedy on the statutory claim under § 605 and its remedy on the conversion claim.

## VI. CONCLUSION

In light of the above discussion, it is recommended that Plaintiff's Motion for Default Judgment (Document # 10) be granted. It is further recommended that Plaintiff be awarded either (1) statutory and enhanced damages in the amount of $15,000 and attorney's fees in the amount of $1,973.40, for a total award of $16,973.40 on its claim under 47 U.S.C. § 605, or (2) actual damages in the amount of $1,100 on its conversion claim. Within fourteen days of the date of this Report and Recommendation, Plaintiff must elect between recovery on the statutory claim or the

conversion claim. Defendants should be found jointly and severally responsible for these damages awards.

                                                    s/Thomas E. Rogers, III
                                                   Thomas E. Rogers, III
                                                   United States Magistrate Judge

March 12, 2012
Florence, South Carolina

**The parties are directed to the important notice on the following page.**